UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANTHONY R. EDWARDS, et al.,

CASE NO. 16-21221-Civ-Scola

Plaintiffs,

v.

DELOITTE & TOUCHE, LLP,

Defendant.
_______________________________/

**PLAINTIFFS' MOTION UNDER FED. R. CIV. P. 59(E)**

Pursuant to Fed. R. Civ. P. 59(e), the originally-named plaintiffs (the "Plaintiffs"), each of whom is a private shareholder of the Federal National Mortgage Association ("Fannie Mae"), ask this Court to amend and alter its judgment in this case and reconsider its Order Denying Motion to Remand and Granting Motion to Substitute (the "Order") (Doc. 50), which ruled that all of the suing shareholders' claims are derivative and, therefore, barred by the Housing and Economic Recovery Act of 2008 ("HERA"). For the reasons that follow, Plaintiffs ask this Court to conclude that the negligent misrepresentation claims are *direct* claims not barred by HERA.[1]

**Standard under Fed. R. Civ. P. 59(e) and Relief Sought**

The grounds for granting a Rule 59(e) motion include "manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). This Court made manifest errors of law

[1] By filing this Motion, Plaintiffs do not abandon any argument originally stated in opposition to FHFA's motion to substitute. For instance, Plaintiffs maintain that the shareholders' aiding and abetting breach of fiduciary claims against Deloitte are also direct claims not barred by HERA. And, Plaintiffs contend that FHFA misinterprets the statutory language when the agency suggests that HERA grants the Conservator the authority to succeed to any and all shareholder claims. Plaintiffs continue to assert that, even if their claims are derivative, FHFA is not entitled to substitute as the plaintiff because of its manifest conflict of interest. Lastly, Plaintiffs dispute FHFA's contention that HERA's anti-injunction provision bars the shareholders' suit for damages.

and fact by omitting in the Order any consideration of the Plaintiffs' claims for negligent misrepresentation against Defendant, Deloitte & Touche, LLP ("Deloitte"), and in ruling instead that the Plaintiffs brought only derivative claims. Nowhere in its Order did the Court consider the allegations of harm specific to the Plaintiffs' claims for negligent misrepresentation. Instead, the Court focused only on the Plaintiffs' aiding and abetting breach of fiduciary duty claims. (*See, e.g.*, Doc. 50, at 9.) Plaintiffs ask this Court, under Rule 59(e), to alter or amend its judgment, vacate the Order, and conclude that the negligent misrepresentation claims are direct claims not barred by HERA. Alternatively, if the Court determines that the Plaintiffs' negligent misrepresentation claims are not sufficiently pled, Plaintiffs ask that those claims be dismissed without prejudice and with leave to amend pursuant to Fed. R. Civ. P. 15(a)(2).

## Argument on Rule 59(e) motion

**Plaintiffs' negligent misrepresentation claims are direct claims not barred by HERA**.

### A. Introduction

In deciding whether a claim is derivative or direct under Delaware law, courts must "look to all the facts of the complaint." *Dieterich v. Harrer*, 857 A.2d 1017, 1027 (Del. Ch. 2004); *accord Poptech, L.P. v. Stewardship Inv. Advisors, LLC*, 849 F. Supp. 2d 249, 262 (D. Conn. 2012). The duty of the court is to "look at the nature of the wrong alleged, not merely . . . the form of words used in the complaint." *In re Syncor Int'l Corp. Shareholders Litig.*, 857 A.2d 994, 997 (Del. Ch. 2004).

This Court reasoned that whether a stockholder's claim is derivative or direct, under Delaware law,[2] "turn[s] *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" (Doc. 50, at 8 (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)). Here, the Complaint includes allegations of negligent misrepresentation to show that: (1) the suing shareholders suffered individualized harm when they relied on Deloitte's negligent and misleading audit reports and misstatements to purchase and hold shares of Fannie Mae; and (2) those same suing shareholders – and not Fannie Mae (or even, for that matter, FHFA) – are entitled to receive the benefits of any recovery against Deloitte. Only those individual shareholders who were induced by Deloitte's negligent audit reports to purchase and hold shares of Fannie Mae may recover damages against Deloitte arising from that reliance. Because the Plaintiffs are members of that limited subset of Fannie Mae shareholders, their claims against Deloitte for negligent misrepresentation are direct claims that may be brought by the Plaintiffs themselves.

The Court based its decision on manifest errors of law and fact. (*See* Doc. 50, at 8-10.) The Court did not address the nature of the harm caused by the individual Plaintiffs' reliance on Deloitte's negligent misrepresentations, but simply characterized the claimed injuries as harm to Fannie Mae caused by the "loss of stock value," which is not "an independent harm." (*E.g.*, Doc. 50, at 9.) When the allegations of the Complaint are correctly construed under Delaware law, it is evident that the suing shareholders – each of whom relied on Deloitte's negligent audit reports

[2] The Federal Housing Finance Agency ("FHFA") and the Plaintiffs agree that "Delaware law concerning whether a claim is direct or derivative may apply." (Doc. 15, at 11 n.6.) However, the substantive law governing the negligent misrepresentation claims may not be Delaware law.

and misstatements to purchase and hold shares of Fannie Mae – individually suffered harm, and are entitled to the benefit of any recovery against Deloitte. Accordingly, Plaintiffs' negligent misrepresentation claims are direct, not derivative.

**B. Plaintiffs claim individualized harm as a result of their reliance on Deloitte's negligent misrepresentations.**

Delaware courts have "long recognized that the same set of facts may result in direct and derivative claims." *Grimes v. Donald*, 673 A.2d 1207, 1212 (Del. 1996), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *see Halpert v. Zhang*, No. 12-1339, 2015 WL 1530819, at *2 (D. Del. 2015). Where, as here, a wrong may harm both the corporation and its shareholders directly, that wrong can be challenged through either a direct or a derivative action. *See, e.g., Gatz v. Ponsoldt*, 925 A.2d 1265, 1278 (Del. 2007); *Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006); *Grimes*, 673 A.2d at 1212. Thus, even if Deloitte's misconduct also may have harmed Fannie Mae, the suing shareholders should not be precluded from bringing a direct action against Deloitte for negligent misrepresentation. *See Poptech*, 849 F. Supp. 2d at 262-63 (rejecting interpretation that direct claims are permitted *only* when the corporation has suffered no injury); *but see Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 384-85 (5th Cir. 2005) (ruling that plaintiff's claims for fraud and negligent misrepresentation, brought against corporation for its misstatements related to the company's financial condition, were derivative; the alleged harm – a drop in the share price caused by the untimely disclosure – indirectly injured all the shareholders).

Indeed, as the Supreme Court of Delaware recently instructed, to determine whether claims are direct or derivative, an "important initial question" must be answered; namely, "does the plaintiff seek to bring a claim belonging to her personally or one belonging to the corporation itself?" *Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1127 (Del. 2016) (quoting *NAF*

*Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 180 (Del. 2015)). Where the shareholder asserts a claim based on his own right, that claim is personal. *See id*. at 1139-40. This alone is enough to make the shareholder's claim direct. *See id*. at 1139-41.

The claims at issue in *Citigroup* alleged damages based on a plaintiff's continuing to hold corporate stock in reliance on the defendant's misstatements. *Id*. at 1126. According to *Citigroup*, under the substantive law governing the fraud and misrepresentation claims (that of either New York or Florida), the claims "belong[ed] to the shareholder who allegedly relied on the . . . misstatements to her detriment." *Id*. Thus, the Delaware Supreme Court ruled, "the holder claims are not derivative because they are personal to the stockholder and do not belong to the corporation itself," and the "familiar two-pronged test" of *Tooley* did not apply. *Id*. at 1126-27, 1139-40.

Here, like the facts of *Citigroup*, the Plaintiffs' negligent misrepresentation claims belong to the shareholders themselves.[3] The individual shareholders – not FHFA – purchased and owned the shares of Fannie Mae stock. (Doc. 1 at 4, ¶ 11.) Each of the suing shareholders allegedly relied on Deloitte's misstatements to his or her detriment. (*E.g.*, Doc. 1, at 30-31, ¶¶ 105-110.)

[3] FHFA sought to distinguish *Citigroup* in its motion to substitute. (Doc. 15, at 14-15.) According to FHFA, this decision "does not render Plaintiffs' negligent misrepresentation claims direct." (*Id*. at 14.) Yet whether the plaintiffs are current or former shareholders – or whether the alleged negligent defendant is the independent accounting firm charged with preparing the company's audit reports or the company itself – is irrelevant. (*Contra id*. at 14-15.) The identity of the maker of the alleged negligent misstatements does not matter. Deloitte does not owe its duty of reasonable care to Fannie Mae alone. *E.g.*, *NationsBank, N.A. v. KPMG Peat Marwick LLP*, 813 So. 2d 964, 966-67 (Fla. 4th DCA 2002) (finding that banks, who relied on audits prepared by an accounting firm *hired by the borrower*, could sue the accountants for negligent misrepresentation under section 552 of the Restatement (Second) of Torts) (citing *First Fla. Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9 (Fla. 1990)). Moreover, FHFA did not explain how shareholders of Fannie Mae who did *not* rely on Deloitte's misstatements would nonetheless be entitled to "share in an award of damages" to the company for the auditor's negligent misrepresentations. (Doc. 15, at 15.) FHFA ignored the personal nature of the tort claim.

The alleged harm arising from Deloitte's misstatements is unique to each individual shareholder. *See Citigroup*, 140 A.3d at 1126, 1139-40. Not every Fannie Mae shareholder relied on the negligent audit reports and misstatements of Deloitte in deciding to buy shares of the company's stock. Similarly, "not all stockholders . . . relied on . . . misrepresentations . . . [to] abandon[] plans to sell" those shares. *Id*. at 1140, n.74 (citing *In re Countrywide Corp. S'holders Litig.*, 2009 WL 846019, at *12 (Del. Ch. Mar. 31, 2009), which provides that "holder claims are individual in nature [because they] require a merits determination of facts [that are] uniquely individual").

Nonetheless, this Court presumed that because a direct claim under Delaware law requires a plaintiff to demonstrate that he can prevail "without showing an injury to the corporation," the suing shareholders can claim no "independent harm" from the loss of stock value. (Doc. 50, at 8-9 (citing 845 A.2d at 1036).) Yet, Delaware law requires only that "a plaintiff state a direct claim of individual harm upon which he or she can rely that was not *also* suffered by the corporation." *Poptech*, 849 F. Supp. 2d at 263 (citing, *inter alia*, *Grimes*, 673 A.2d at 1212). In other words, a plaintiff should not be precluded from bringing a direct suit simply because he alleged harm that was related *in some way* to the diminution in the value of his shares. *See id*. at 262-63.

Instead, to state a direct claim, a plaintiff must allege that he suffered some individualized harm not suffered by all of the shareholders at large. *See Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008). Where, as here, a plaintiff claims that he was induced by an auditor's misrepresentations to purchase and hold shares, that inducement is a separate and individual injury to the purchasing shareholder, which gives rise to a direct claim under *Tooley*. *See*

*Poptech*, 849 F. Supp. 2d at 263; *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 611-12 (S.D.N.Y. 2010); *KPMG LLP v. Cocchi*, 88 So. 3d 327, 329-30 (Fla. 4th DCA 2012).

**C. The negligent misrepresentation claims must be treated as direct claims.**

The Complaint's allegations show the nature of the harm suffered by the Plaintiffs in reliance on Deloitte's misstatements, and entitle the individual shareholders to pursue those claims.

**1. The suing shareholders, individually, suffered the alleged harm.**

The suing shareholders suffered the alleged harm resulting from Deloitte's negligent misrepresentations. Each of the Plaintiffs alleges that Deloitte's negligent audit reports and misrepresentations induced him to invest in Fannie Mae. Specifically, the suing shareholders allege that Deloitte breached its duty to Fannie Mae's prospective and existing stockholders to accurately and fairly represent the company's financial status and to exercise reasonable care and competence in the audit reports. (*E.g.*, Doc. 1, at 29-31, ¶¶ 102, 103 & 107.) Plaintiffs allege that they relied on the negligent audit reports and material misstatements to purchase or hold Fannie Mae stock. (*Id.* at 30, ¶¶ 103, 105.) As a result of each suing shareholder's reliance on Deloitte's negligent audits and resulting misrepresentations, each of the Plaintiffs incurred substantial losses, in an amount to be proven at trial. (*Id.* at 31, ¶¶ 110, 111.)

Not every investor relied on Deloitte's negligent audits and misrepresentations to purchase or hold Fannie Mae stock. *See Citigroup*, 140 A.3d at 1140 n.74 (noting that "the alleged harm in a holder claim is not shared equally by all stockholders because not all stockholders will have relied on the . . . misrepresentations and abandoned plans to sell their shares"). Certainly, "shareholders who were fraudulently induced to invest in a corporation are not similarly situated to shareholders who did not rely on misrepresentations or omissions." *Poptech*, 849 F. Supp. 2d at 263. As a result, even if Deloitte's misconduct also may have caused

injury to Fannie Mae, each of the suing shareholders sufficiently alleged an individualized harm not suffered by all of the stockholders at large. *See Feldman*, 951 A.2d at 733; *see also KPMG LLP*, 88 So. 3d at 329-30 (interpreting Delaware law to find that "[b]ecause the claims of negligent misrepresentation . . . allege individual harm to the plaintiffs and involve torts directed at the individual limited partners, . . . the limited partners suffered individual harm"; as a result, the claims were not derivative claims subject to arbitration).

When correctly analyzed under Delaware law, the allegations of the Complaint demonstrate "a separate and individual injury" to each suing shareholder. *See Poptech*, 849 F. Supp. 2d at 262-64. Thus, this Court should conclude that the suing shareholders' negligent misrepresentation claims are direct. *See id.*; *accord Stephenson*, 700 F. Supp. 2d at 611-12; *KPMG*, 88 So. 3d at 329-30.

**2. The suing shareholders, individually, are entitled to receive the benefit of any recovery.**

Likewise, the answer to the question who would receive the benefit of any recovery supports a determination that the suing shareholders' negligent misrepresentation claims are direct. Courts answering this question have considered whether the claims of misrepresentation or fraud include allegations of inducement. *See Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 611-12 (S.D.N.Y. 2010) (interpreting Delaware law); *accord Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 316 (S.D.N.Y. 2010). To the extent the suing shareholders allege inducement, their negligent misrepresentation claims are direct. *See Stephenson*, 700 F. Supp. 2d at 611-12; *accord Newman*, 748 F. Supp. 2d at 316.

Here, the suing shareholders allege that: (1) Deloitte breached its duty of reasonable care and competence when it conducted negligent audits and made material misstatements concerning Fannie Mae's financial condition; and (2) Deloitte's negligent audits and misrepresentations

induced each Plaintiff to purchase and hold Fannie Mae stock. (Doc. 1, at 30-31, ¶¶ 103-110.) *See Stephenson*, 700 F. Supp. at 611-12 (considering effect of plaintiffs' claims arising under theories of negligent and fraudulent inducement). The suing shareholders relied on Deloitte's audit reports in deciding to purchase and retain Fannie Mae shares.

Not all of Fannie Mae's shareholders can claim reliance on Deloitte's audit reports. Damages from the negligent misrepresentation claims based on Deloitte's misleading and untrue audit reports are available only to that limited subset of shareholders who relied on those reports to invest in Fannie Mae. Any "recovery on a claim based solely on inducement would only flow to those individuals, such as [these plaintiffs allege they were], who were so induced." *Stephenson*, 700 F. Supp. 2d at 612; *accord Newman*, 748 F. Supp. 2d at 316.

Moreover, if the Plaintiffs are successful in their suit against Deloitte, the damages recovered will be paid directly to the injured shareholders – not FHFA or Fannie Mae. (*See, e.g.*, Doc. 1, at 30, ¶ 105; *id*. at 31, ¶¶ 110-11.) *See, e.g., Anglo Am. Sec. Fund, L.P. v. S.R. Global Int'l Fund, L.P.*, 829 A.2d 143, 150 (Del. Ch. 2003). Again, only those shareholders who can allege – and prove – that Deloitte's audits and material misrepresentations induced them to purchase or hold Fannie Mae stock will be entitled to share in the damages recovered against the auditor for its negligence. Accordingly, the negligent misrepresentation claims are necessarily direct. *See Stephenson*, 700 F. Supp. 2d at 612; *Newman*, 748 F. Supp. 2d at 316.

### D. Conclusion on Rule 59(e) argument

This Court reached the wrong conclusion when it determined that the Complaint alleges only derivative claims. The Court overlooked the nature of the harm specifically alleged in the Complaint resulting from Deloitte's negligent misrepresentations. Plaintiffs alleged not only harm to Fannie Mae and the loss of stock value, but also individualized harm resulting from each

suing shareholder's reliance on Deloitte's negligent audit reports and misstatements to purchase and hold Fannie Mae stock. Only those shareholders who were so induced – and who have joined in this action – are entitled to recover damages against Deloitte based on its inducement.

When these allegations are properly considered, it is evident that Plaintiffs' negligent misrepresentation claims against Deloitte must be treated as direct claims that belong to the shareholders themselves. FHFA, as the Conservator of Fannie Mae, does not succeed to the individual shareholders' rights, and is not entitled to substitute for the Plaintiffs in this action. Should this Court grant relief under Rule 59(e) and allow the Plaintiffs to proceed on their negligent misrepresentation claims against Deloitte, Plaintiffs reserve the right to renew their motion for remand.

**Plaintiffs' Motion for Leave to Amend the Complaint**

Effectively, by ruling that the Plaintiffs only brought derivative claims, and by granting FHFA's motion to substitute, this Court has dismissed all of the Plaintiffs' claims. Plaintiffs believe that the Complaint, originally filed in state court,[4] adequately states direct claims against Deloitte. However, to the extent this Court considers the allegations of the Complaint to be inadequate, Plaintiffs ask, pursuant to Fed. R. Civ. P. 15(a)(2), that the dismissal be without prejudice and with leave to amend the Complaint to clarify any ambiguity and to further demonstrate the direct nature of all of Plaintiffs' claims. If such leave is granted, Plaintiffs will promptly provide the required amended pleading, pursuant to S.D. Fla. Local Rule 15.1.

**Conclusion**

The specific allegations of the Plaintiffs' negligent misrepresentation claims should have been considered and analyzed, and the tort claims treated as direct claims under Delaware law.

[4]Plaintiffs' state-court Complaint should not be reviewed under the more stringent federal pleading standards.

Plaintiffs ask this Court to reverse its ruling on substitution to find that FHFA has no right to substitute for the Plaintiffs on their direct claims against Deloitte for negligent misrepresentation. Alternatively, Plaintiffs ask this Court that the dismissal of its Complaint be without prejudice and with leave to amend to clarify that all of the claims brought against Deloitte are direct claims are not barred by HERA.

**Rule 7.1(a)(3) Certification**

Before filing this Motion, Plaintiffs conferred with FHFA and Defendant. Defendant opposes the relief requested. FHFA has not yet responded, but Plaintiffs indicated to FHFA that Plaintiffs would presume FHFA opposes the motion. In the event FHFA does not oppose the Motion, Plaintiffs will file an amended Certification.

Respectfully submitted,

BAJO | CUVA | COHEN | TURKEL

/s/ *Brad F. Barrios*
Kenneth G. Turkel, Esq.
Florida Bar No. 867233
kturkel@bajocuva.com
Brad F. Barrios, Esq.
Florida Bar No. 0035293
bbarrios@bajocuva.com
100 North Tampa Street
Suite 1900
Tampa, Florida 33602
Telephone: (813) 443-2199
*Attorneys for Plaintiffs*

and

Steven W. Thomas, Esquire
Thomas, Alexander, Forrester & Sorensen LLP
14 27th Avenue
Venice, CA 90291
Telephone: 310-961-2536
Telecopier: 310-526-6852
Email: steventhomas@tafattorneys.com

Hector J. Lombana, Esquire
FLBN: 238813
Gamba & Lombana
2701 Ponce De Leon Boulevard
Mezzanine
Coral Gables, FL 33134
Telephone: 305-448-4010
Telecopier: 305-448-9891
Email: hlombana@glhlawyers.com

Gonzalo R. Dorta, Esquire
FLBN: 650269
Gonzalo R. Dorta, P.A.
334 Minorca Avenue
Coral Gables, FL 33134
Telephone: 305-441-2299
Telecopier: 305-441-8849
Email: grd@dortalaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 15, 2017, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

*/s/ Brad F. Barrios*
Attorney